## LANKFORD, *State Bank Com'r*. v. MENEFEE.

No. 3330.    Opinion Filed December 22, 1914.

Rehearing Denied January 9, 1914.

(145 Pac. 375.)

1.    BANKS AND BANKING—Liability of Stockholders—Extent—
"Corporation—Banking Business.  Where a company is organized
under act approved March 8, 1901, (article 5, c. 11, Laws 1901),
relating to trust companies, as amended by act approved March
15, 1905 (article 3, c. 10, Laws 1905), and thereafter does a bank-
ing business, within the contemplation of act approved March 10,
1899 (Sess. Laws 1899, c. 4, sec. 37) and fails, in a suit by the
bank commissioner against a stockholder of said trust company,
held, that the extent of defendant's liability is measured by sec-
tion 16 of the Trust Company Act, and is to the extent only of
double the amount that is unpaid upon the stock held by him.
Held, further, as the term "corporation" does not include stock-
holders, although defendant be such in a trust company doing
also a banking business, he cannot, as such stockholder, be said
to be doing a banking business, within the contemplation of act
approved March 10, 1899 (chapter 4, Sess. Laws 1899, sec. 37),
so as to be chargeable as a stockholder of, a bank organized
under the general banking law act approved March 10, 1899
[chapter 4 Sess. Laws 1899]), as revised by act approved March
26, 1908 (chapter 6, Sess. Laws 1907-08), and by section 11 of the
original and section 9 of the revising act, made liable to the
amount of his stock.

(Syllabus by the Court.)

Riddle, J., dissenting.

*Error from District Court, Caddo County;*

*J. T. Johnson, Judge.*

Action by J. D. Lankford, State Bank Commissioner, against
J. A. Menefee.  Judgment for defendant, and plaintiff brings
error.  Affirmed.

*Charles West*, Atty. Gen., and *Stuart, Cruce & Gilbert*, for
plaintiff in error.

*A. J. Morris,* for defendant in error.

LOOFBOURROW, J.   On August 9, 1911, J. D. Lankford as bank commissioner, commenced this action in the district court of Caddo county.   His amended petition substantially states: That on October 17, 1905, the Columbia Bank & Trust Company filed its articles of incorporation with the secretary of the territory of Oklahoma, and soon thereafter commenced to do business in the city of Oklahoma.   A copy of said articles of incorporation is thereto attached and marked Exhibit A.   That said Columbia Bank & Trust Company was incorporated both under the laws of the territory of Oklahoma, relating to trust companies, and under the laws of the said territory relating to banks, and that said Columbia Bank & Trust Company was incorporated for the purpose both of doing a trust company business and doing a banking business.   That, from and after the date on which said company commenced to do business in the territory of Oklahoma and up to the time of its failure in September, 1909, said company engaged in the banking business, both before and after statehood, and, at all times after the date of its organiaztion and up to the time of its failure, received money on both general and special deposit, and conducted a general banking business, subject to the laws of the territory of Oklahoma relating to banks, and subject to the laws of the state of Oklahoma relating to banks.

Plaintiff further states:   That there was never any reorganization of said Columbia Bank & Trust Company, but that said bank and trust company continued to do a banking business up to and after statehood, under and subject to the banking laws of the state of Oklahoma, until September 7, 1909, when said Columbia Bank & Trust Company failed, and is now unable to meet, with its assets and credits, its debts and obligations. That said bank commissioner, acting under authority of law, has possession of said Columbia Bank & Trust Company, and the

same is now under his control as such for the purpose of liquidation and settlement of the claims of its creditors. That the liabilities and obligations of said Columbia Bank & Trust Company amount to a very large sum of money, and that, when all the assets and credits of said bank have been subtracted from its total liabilities, a sum of money is left as liabilities, in an amount far greater than the amount of all the stock subscribed and paid in by the stockholders of said bank; the amount of stock so paid in by the stockholders being $200,000. That it is necessary for him, as bank commissioner, to enforce the personal liability of the stockholders of said bank to make good the foregoing deficit. That, at the time said bank was taken over as aforesaid, one J. A. Menefee was the owner of 250 shares of stock of $100 each in said bank, fully paid up, and said Menefee is still the owner of said stock. That, by reason thereof, the said Menefee is still liable to this plaintiff, as bank commissioner, in the sum of $25,000, same being the amount of stock subscribed and paid up by said defendant, and prays judgment for $25,000.

The material part of the charter of the Columbia Bank & Trust Company, filed as Exhibit A, reads:

## "ARTICLES OF AGREEMENT.

"We, the subscribers, hereby associate ourselves together by the following articles of agreement; for the purposes herein set forth:

"Article 1. The name of this corporation shall be 'the Columbia Bank and Trust Company.'

"Article 2. This corporation shall be located in the city of Oklahoma City, Oklahoma county, territory of Oklahoma.

"Article 3. The amount of capital stock of this corporation shall be two hundred thousand ($200,000) dollars, divided into two thousand 2,000) shares, of the par value of one hundred ($100) dollars each, which said shares are now actually paid up in lawful money of the United States of America, and the money

is in the custody of the persons named as the board of directors and its officers.

"Article 4.   *   *   *

"Article 5.   *   *   *

"Article 6.   *   *   * .

"Article 7. The purposes for which this corporation is formed are: First. To receive money in trust or on general deposit with or without interest as may be agreed upon, and to accept and receive saving accounts and the payment to them or their order of deposits made by minors shall be binding on them; to receive upon deposit for safe keeping personal property of every description; to guarantee special deposits and to own and control safety vaults and rent boxes therein. Second. *   *   *"

To this amended petition defendant filed a general demurrer and the same was, by the court, sustained. Plaintiff elected to stand upon the amended petition, and the judgment was thereupon entered in favor of the defendant, from which judgment the plaintiff appeals.

The petition alleges that the Columbia Bank & Trust Company was incorporated both under the laws of the territory of Oklahoma, relating to trust companies, and under the laws of the said territory, relating to banks. This statement of a legal conclusion is not binding upon the court as against a demurrer, unless the law and the petition sustain such allegation. As appears from the face of its charter, said company was, in fact, organized under the laws of the territory of Oklahoma (article 5, c. 11, Sess. Laws 1901), relating to trust companies, as amended by article 3, c. 10, Laws 1905, and the charter recites verbatim section 4 thereof, as amended by article 3, c. 10, Laws 1905.

As section 16, Trust Company Act, provides:

"Each stockholder of a company organized under this act shall be individually and personally liable for the debts of the

corporation to the extent only of double the amount that is unpaid upon the stock held by him * * *"
—and this failed bank was organized under this act, this section would seem to be conclusive of defendant's liability as a stockholder therein, but section 37, c. 4, Sess. Laws 1899 (General Banking Act), provides as follows:

"Any individual, firm or corporation, who shall receive money on deposit, whether on certificates or subject to check, shall be considered as doing a banking business and shall be amenable, to all the provisions of this act: Provided, that promissory notes issued for money received on deposit shall be held to be certificates of deposit for the purpose of this act."

And plaintiff in error contends that said section 37 remained a part of the banking law, although the same is not incorporated in the revising statute (Sess. Laws 1907-08). That a revising statute takes the place of all the former laws existing upon the subject with which it deals seems settled beyond controversy. 36 Cyc. 1079, lays down the general rule as to revision as follows:

"It is a familiar and well-settled rule that a subsequent statute revising the subject-matter of the former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former * * * [citing numerous decisions from a great many states, United States, and England]. This rule does not rest strictly upon the ground of repeal by implication, but upon the principle that when the Legislature makes a revision of a particular statute, and frames a new statute upon the subject-matter, and from the framework of the act it is apparent that the Legislature designed a complete scheme for the matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded. It is decisive evidence of an intention to prescribe the provisions mentioned in the latter act as the only ones on that subject which shall be obligatory." (Mack v. Jastro, 126 Cal. 130, 58 Pac. 372; State v. Conklin, 19 Cal. 501; People v. Thornton, 186 Ill. 162, 57 N. E 841; Roche v. Jersey City, 40 N. J. Law, 257; Bracken v. Smith, 39 N. J. Eq. 169.)

Same volume, p. 1080:

"Where a statute is revised, some parts of the original act being omitted, the parts which are omitted cannot be revised by construction, but are to be considered as annulled, provided it clearly appears to have been the intention of the Legislature to cover the whole subject by the revision."

See numerous authorities cited in note 52, same page.

"When a statute is revised, and a provision, contained in it, is omitted in the new statute, the inference is that a change in the law was intended to be made. If the omission was by accident, it belongs to the Legislature to supply it." Buck v. Spofford, 31 Me. 34.

These acts are discussed in *Smock v. Farmers' Union State Bank,* 22 Okla. 825, 98 Pac. 945, an opinion by Justice Hayes, wherein it is said:

"The question in this case, then, is not one of legislative power, but of legislative intent, and we must determine the nature of House Bill No. 615 and its effect upon the former laws pertaining to the incorporation of banks and the control and regulation thereof. There is nothing in the title of this act to indicate that it is a revising statute, nor is there any expression in the act declaring it to be such a statute; but a careful comparison of this act and its contents with chapter 8, Wilson's Rev. & Ann. St. 1903 (chapter 4, Sess. Laws 1899), and the acts of the Legislature subsequently enacted, discloses that this act is principally a restatement in a correct and improved form of the laws contained in that chapter and in the subsequent acts of the Legislature. There are, it is true, some material changes, but this does not destroy the nature of the act as a revising act, and it clearly appears from the subject-matter of the act that it it was intended to take the place of all the former laws existing upon the subject with which it deals. *Hudson v. Ely,* 36 Okla. 576 [129 Pac. 11]. In *Bartless et al. v. King,* 12 Mass. 545, 7 Am. Dec. 99, the court said: 'A subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law as well as in reason and

common sense, operate to repeal the former.' This language is quoted in Lewis' Sutherland on Statutory Construction, vol. 1, p. 515, as stating the rule to be that the effect of a statute of revision, without express words repealing previous statutes, when it is apparent that the Legislature intended that the new act should cover the entire subject embraced in all the former statutes, is to repeal said statutes, both as to those parts that are repugnant and those parts that are not repugnant to the new act. The act under consideration, however, contains the following repealing clause: 'All acts and parts of acts in conflict herewith are hereby repealed.' This clause, inserted in acts other than revising acts, neither adds to nor lessens the repealing force of the act. *State v. Yardley,* 95 Tenn. 546, 32 S. W. 481, 34 L. R. A. 656. But, when it is inserted in a revising act, the courts are not uniform in their holding as to its effect. The text on Statutory Construction, above quoted, states the rule, however, as follows: 'If the new act is intended as a revision and substitute for the former act or acts, the general rule applies, and the former act or acts are repealed in toto, though they may contain parts or provisions which are not embraced in the new act and are not repugnant to its provision.' Lewis' Sutherland on Statutory Construction, vol. 1, p. 522, citing *Attorney General v. Parsell,* 100 Mich. 170, 58 N. W. 839; *The Paquete Habana,* 175 U. S. 677, 20 Sup. Ct. 290, 44 L. Ed. 320; *State v. Carbon Hill Coal Co.,* 4 Wash. 422, 30 Pac. 728. House Bill No. 615 covers the entire grounds of said chapter 8, Wilson's Rev. & Ann. St. 1903 (chapter 4, Sess. Laws 1899) and of the four subsequent acts of the Legislature above referred to. It pertains to the same general subject-matter, and seeks to accomplish the same general purpose, and in the main is a re-enactment of those statutes in the same language, and we are therefore of the opinion that said act was intended by the Legislature as a substitute for all the laws then existing upon the subject-matter dealt with in that act, and that said former laws were repealed by it."

But, assuming that this section was not repealed by said revision, there is no merit in the contention that, as the corporation in which defendant was a stockholder was doing a general banking business, defendant's liability as such is fixed by section 11 of the Banking Act (Laws 1899, c. 4) and section 9 of the Revising Act (Laws 1907-08, c. 6), both of which read:

"The shareholders of every bank organized under this act shall be additionally liable for the amount of stock owned, and no more."

In other words, the contention is that, although this failed bank was organized under the Trust Company Act, which provides that stockholders of a company organized thereunder shall be personally liable for the debts of the bank to the extent only of double the amount unpaid upon this stock, yet, by reason of the fact that this company was doing a banking business in addition to a trust company business, his liability as a stockholder was changed or rather fixed by the terms, not of the Trust Company Act, but of the Banking Act, sections 11 and 9, *supra,* so as to be to the extent of the amount of his stock. And this, too, in virtue of section 37, *supra,* of the original banking act. As stated, there is no merit in this for the obvious reason that the defendant, as a stockholder in the failed bank, was neither "an individual, firm or corporation" doing a banking business within the contemplation of that section. To hold otherwise would be to say, not that the corporation was doing a banking business as a corporation, but that the stockholders were doing the business as individuals. The term "individual" and "firm" doing a banking business have no reference to stockholders, and the term "corporation" does not include them; and this statute, declaring, as it does, that "corporation," whether incorporated under that act or not, doing a banking business, shall be amenable to all the provisions of that act, is not broad enough to cover stockholders, so as to fasten the liability upon this stockholder imposed by sections 11 and 16, *supra.* That such was not the intent of the Legislature is clear for the reason that, when the entire Banking Act was revised by chapter 6, Sess. Laws 1907-08, the Legislature recognized the fact that corporations organized under the Trust Company Act were doing a banking business, and specific mention is made in many of the various sections of the said Banking Act of trust companies, and the language of the act was broadened so

as to permit trust companies to continue in the banking business —now if the Legislature had intended that stockholders in a trust company, doing a banking business, should be liable the same as stockholders of a corporation organized under the Banking Act, they could easily have so provided by, for example, carrying section 37, *supra,* into the revision and amending it so as to read:

"Any individual, firm or corporation, and the stockholders thereof, who shall receive money on deposit * * * shall be amenable to all the provisions of this act, including the liability of stockholders: Provided. * * *"

But the Legislature made no such provision, and the word "corporation," as used in section 37, *supra,* is not broad enough to include stockholders. In *Park Bank v. Remsen,* 158 U. S. 337, 15 Sup. Ct. 891, 39 L. Ed. 1008 a certain warehouse company was a corporation of the state of New York, incorporated under a certain act of the Legislature of that state. Section 9 of a certain chapter of the act (Laws 1872, c. 701) provided:

"The corporation hereby created shall possess all the general powers and privileges, and be subject to all the liabilities, conferred and imposed upon corporations organized under and in pursuance of" another act.

The corporation never made and published a report as required by section 12 of that act (Laws 1848, c. 40) which report was to be signed by the president and a majority of the trustees and verified by the oath of the president or secretary. One Squires was president, and one Remsen was a director and trustee of the company. A certain firm doing business in New York made two promissory notes to the order of themselves and indorsed them in blank, which were thereafter indorsed by the warehouse company; the same being made by the president of the company without the knowledge of Remsen or the other directors. Section 12, referred to, provided that, for failure to file the report, the trustees "shall be jointly and severally liable for all the debts of

the company, then existing, and for all that shall be contracted before such report shall be made." In a suit against the warehouse company as indorser of the notes, the court held that it did not become indebted to the plaintiff by reason of its indorsement. In seeking to charge Remsen, as trustee, with the debt of which the promissory notes were the basis, speaking to section 12, *supra*, the court said that, before any party should be held bound by such provisions, it must appear that the Legislature of the state had rendered him subject thereto. In passing, the court said:

"The contention is that section 9 of the charter of the warehouse company in effect incorporates said section 12 into such charter, but the provision of section 9 is that the corporation shall possess all the general powers and privileges and be subject to all the liabilities conferred and imposed upon corporations organized under the act of 1848. It is the corporation which is given the powers and privileges and made subject to the liabilities. Does this carry with it an imposition of liability upon the trustee or other officer of the corporation? The officer is not the corporation; his liability is personal, and not that of the corporation, nor can it be counted among the powers and privileges of the corporation. How, then, can it be contended that a provision in a charter that the corporation thus chartered shall assume all the liabilities imposed by a general statute upon corporation carries with it a further provision of such general statute that the officers of corporations also assume, under certain conditions, the liabilities of the corporation? Does one, by becoming an officer of a corporation, assume all the liabilities resting upon the corporation? Is not his liability of a distinct and independent character and dependent upon other principles? * * * The term 'corporation' does not include stockholders, and a statute imposing a liability upon the corporation does not thereby impose the same upon the stockholders"

—and affirmed the judgment of the circuit court holding the defendant not liable.

A careful examination of the trust company laws and of the banking laws discloses the fact that both may do a general banking business and are subject to the control and supervision of the

Bank Commissioner. The principal differences are: First. That the trust company has authority to accept and execute trusts, as set forth in the second to ninth paragraphs, inclusive, of section 4, art. 5, Laws 1901, while a bank is limited to a general banking business. Second. The capital stock of a bank in a city of more than 10,000 inhabitants cannot be less than $25,000, all of which must be fully paid up, while the capital stock of a trust company cannot be less than $200,000, at least one-half of which must be actually paid up. Third. A shareholder of any bank organized under the Banking Act is additionally liable for the amount of stock owned, and no more, while a stockholder of any trust company, organized under the Trust Company Act, is personally liable to the extent only of double the amount that is unpaid upon the stock held by him.

Banks and trust companies are corporations, and each are regarded as legal entities. They have a separate existence from the persons who control them. There is said to be no identity between the owners and the holders of the stock and the corporation itself. The corporation is the real, though artificial, person substituted for the natural persons who may procure its creation and be financially interested therein. Every such corporation must be organized or incorporated for a particular purpose. Such purpose is usually expressly stated in the act of the statute giving life to the corporation. The Constitution or the statute fixes the liability of the stockholders of a corporation, and in this case the liability prescribed by the statute is, in its nature, contractual. The Legislature prescribed that the liability of a stockholder in a trust company should be double the amount that is unpaid upon the stock by him held. When the defendant purchased this stock he became the equitable owner of that much corporate property, but the power to transact business under the charter could be exercised only by the corporation. The defendant assumed all of the liabilities imposed by the statute upon him as a stockholder in a trust company. His contract was that he

would pay the par value of the stock by him owned. He had therefore complied with every condition of his contract, and the petition does not state a cause of action against him.

The judgment of the trial court is affirmed.

KANE, C. J., and TURNER and BLEAKMORE, JJ., concur.

RIDDLE, J., (dissenting). I am unable to agree with the reasoning and conclusion in the opinion upon rehearing of the majority of the court. Owing to the importance of the question involved, as affecting both the state and the defendant, as well as marking the beginning of what I deem a new policy affecting corporations generally, especially the basic principles of the bank guaranty law, I deem it my duty to set forth my views in detail.

In preparing the original opinion I examined the authorities cited by both parties, and made an independent investigation of many others, and reached a conclusion which I believed was unquestionably the law. The opinion was submitted to the full court, and after due consideration was concurred in by all of the members thereof, with the exception of Justice Dunn, and his dissent was not sufficiently strong to induce him to write a dissenting opinion. Whatever doubt existed in my mind as to the soundness of the conclusion reached was removed when the older members of this court heartily concurred therein. The original opinion remained the law of this case for more than three months; and as no new ideas were advanced, and but little additional authority cited, I see no reason to change my views. If the conclusions reached and concurred in by the other justices were sound, and correct principles of law enunciated, they are still sound, and the law announced should remain the law of the case.

I am sure it is the desire of every member of this court to reach a proper conclusion and decide the law as it actually is, regardless of the consequences. We should follow the law as our

sovereign guide; the law as announced upon the highest authority; the law as it is written, interpreted, and construed according to its plain letter and true spirit; the law as construed by broad common sense, as applied to the subject-matter under consideration.

The opinion on the petition for rehearing rests almost solely as a basis upon section 16 of the act of the Legislature of 1901, which we designate as the Trust Company Act, and which reads:

"Each stockholder of a company organized under this act shall be individually and personally liable for the debts of the corporation to the extent only of double the amount that is unpaid upon the stock held by him."

While section 37 of chapter 4 of the Session Laws of 1899 of the General Banking Act was considered, yet this whole chapter, regulating the banking business, was dismissed by the court by holding that said section was not broad enough to include stockholders. So far as material here the section reads:

"Any individual, firm, or corporation who shall receive money on deposit, whether on certificates or subject to check, shall be considered as doing a banking business and shall be amenable, to all of the provisions of this act," etc.

In my judgment it is immaterial, so far as the rights of the parties in this litigation are concerned, whether this section ever existed; to reach a proper and just conclusion the issues must be determined upon much broader grounds.

In addition to the fact that the opinion on rehearing is based almost exclusively on section 16 of the Trust Company Act, *supra,* the conclusion reached shows that the liability sought to be recovered in this case is considered as a penalty fixed by the statute and not one growing out of a contract. Although the writer of the opinion states that the liability is "contractual," yet the conclusion and reasoning show it was considered a penalty. The main authority relied upon in the case of *National Park Bank v.*

*Remsen,* 158 U. S. 337, 15 Sup. Ct. 891, 39 L. Ed. 1008. In preparing the original opinion of the court my conclusion was that this case was inapplicable for two reasons: First, as set forth therein, that the highest court of New York had held that the liability sought to be recovered against the trustee was not a debt of the corporation, and therefore there could be no recovery against the trustee, as the corporation did not owe the debt. The second reason is that the case proceeded wholly on the theory that the liability sought to be recovered was a penalty, which the record in the case shows was correct. Mr. Justice Brewer, in concluding the opinion, uses the following language:

"And, in the absence of any controlling decisions, we are unwilling to hold that a provision of a general statute imposing a personal liability on trustees or other officers is incorporated into a special charter by a clause therein declaring that the corporation shall possess all the general powers and privileges and be subject to all the liabilities conferred and imposed upon corporations organized under such general act. Something more specific and direct is necessary to burden an officer of the corporation with a penalty for omission of duty."

It will be seen that this was clearly a penalty imposed for the omission of duty by an officer. But suppose the liability sought to be recovered in that case grew out of a contract, in which event it must be held that the defendant assented to the same, then it is clear that the decision and language of Justice Brewer would have been different. The court further proceeds upon the theory that the general laws applicable to the subject did not enter into and become a part of the charter or articles of incorporation under which the Columbia Bank & Trust Company transacted its business; and, proceeding under a false premise, necessarily an erroneous conclusion was reached.

It is admitted both by the demurrer and in the brief of counsel for the defendant that the Columbia Bank & Trust Company was a banking corporation and was at all times during its exist-

ence engaged in the general banking business, and we must assume that it enjoyed all the privileges, rights, and had all the protection of other state banking institutions. On page 47 of the brief of counsel for the defendant, we find this admission:

"I admit that the Columbia Bank & Trust Company was a corporation doing a banking business, and in the ordinary sense of the term was a banking corporation."

The first point that naturally challenges the attention of the court, in view of this clear admission, is: Why should the Legislature make such an unwarranted and inequitable discrimination between banking corporations organized under the Trust Company Act and those organized under the General Banking Act? What was the controlling influence that brought about this legislation that the Legislature should make such an unreasonable discrimination, if in fact it was the intent of that body to relieve stockholders doing a general banking business, and who were members of a banking corporation organized under the Trust Company Act, from a liability imposed upon stockholders of other banking institutions doing exactly the same kind of banking business organized under the general banking law and receiving no more benefits or protection? What were the evils sought to be remedied—the blessings intended to be bestowed.

The only reason which has been suggested is that a trust company was required to have a much larger capital than a bank; yet, if the contention of the defendant be true, trust companies were permitted to transact all the business usually transacted by trust companies, and in addition thereto engage in a general banking business without any additional capital from other trust companies, and receive all the benefits and protection of the general banking law as well as the trust company law, without assuming any of the burdens or assenting to any of the liabilities imposed under the general banking law. This, in my opinion, is too arrow and technical a construction of the statute, and such an

intent should not be attributed to the Legislature, if it can be avoided.

The opinion of the court overlooks and ignores certain well-established principles of law, which, if adhered to, greatly simplify the questions involved.

Section 47, art. 9, of the Constitution provides:

"The Legislature shall have the power to alter, amend, annul, revoke, or repeal any charter of any corporation or franchise now existing and subject to be altered, amended, annullel, revoked, or repealed at the time of the adoption of this Constitution, or any that may be hereafter created, whenever in its opinion it may be injurious to the citizens of this state, in such manner; however, that no injustice shall be done to the incorporators."

Section 1255 of Comp. Laws 1909, of the laws enacted by the Legislature of 1893, reads:

"Every grant of corporate power is subject to alteration, suspension, or repeal, in the discretion of the Legislature."

It is undebatable that under this reservation the Legislature could at will make any reasonable amendment to a charter or franchise of any corporation without the consent of the incorporators. It is also a well-settled principle of law that the provisions of every general law applicable to the business or subject-matter of any corporation enters into and becomes a part of the franchise or charter, and that the corporation and stockholders are controlled by and subject thereto. The liability sought to be recovered of the defendant in this case being contractual and not a penalty, section 37 of the General Banking Law of 1899 was broad enough to include both the corporation and the stockholders; or, in other words, I think it was the intent of the Legislature expressed in this section, considered in connection with other provisions, that, before a corporation or the incorporators should receive the benefits and protection of the General Banking Act, it was necessary

that they should comply with all of the provisions of that act and, by accepting the benefits and protection thereof, should necessarily assent to the liabilities imposed. But waiving this point, and discussing the proposition as though this provision had never been a part of the general banking law. Prior to 1905 corporations organized under the Trust Company Act were not authorized to receive money on general deposit, but in the latter year this law was amended permitting same.

. There are many authorities holding that a corporation receiving money on general deposit is, in the ordinary acceptance of the term, doing a banking business; however, it is unnecessary to waste any time in defining a bank or the banking business, in view of the admission in this case that the Columbia Bank & Trust Company was at all times engaged in the banking business, and in the usual meaning of the term was a banking corporation.

The amendment to the trust company law extended the charter of the Columbia Bank & Trust Company, authorizing it to receive money on general deposit, which also had the effect of permitting a general banking business, upon condition, however, that it comply with and be subject to the provisions of the general banking law. Section 11 of the Banking Act of 1899 (section 252 of Wilson's Rev. & Ann. Stat., 1903) provides:

"Stockholders of every bank organized under this act shall be additionally liable for the amount of stock held, and no more."

Section 17 of the Banking Act of 1899, (section 258 of Wilson's Rev. & Ann. Stat., 1903) provides:

"It shall be unlawful for any individual, firm or corporation to transact a banking business, or to receive deposits except by this act authorized; any person violating any provision of this section, either individually or as an interested party in any association or corporation, shall be guilty of a misdemeanor, and on conviction thereof, shall be fined in a sum not less than three hundred or more than one thousand dollars, or by imprisonment

in the county jail not less than thirty days nor more than one year, or by both such fine and imprisonment."

It will be seen under this section that not a dollar could the Columbia Bank & Trust Company receive on general deposit without first complying with all of the provisions of the Banking Act, and it cannot be said that this section only applies to the corporation, and that it does not include the officers and stockholders.

Reading section 37 in connection with section 17, it is clear to my mind that it was never intended that a trust company should engage in the general banking business without it and its officers and stockholders being subject to the general banking law. But, waiving this point, still under the general law and the well-recognized principle of construction, when the Columbia Bank & Trust Company, through its officers, filed its articles of incorporation and voluntarily engaged in the general banking business, every provision of the General Banking Act regulating the banking business was applicable to the Columbia Bank & Trust Company and became a part of and must be read into its charter. There is but little diversity of opinion upon this proposition.

Quoting from volume 1 of Beach on Corporations, sec. 146, p. 271:

"So all existing statutes or charter provisions imposing additional liabilities upon stockholders for the corporate debts enter into and become a part of contracts between the company and its creditors, and the obligations thereby imposed are not to be impaired by a repeal of the statute or an amendment to the charter; such legislation operating only upon subsequently contracted debts. But when the liability imposed is in the nature of a penalty it may be abolished even in respect to claims arising prior to the enactment of the statute, for there can be no vested right to the enforcement of a penalty."

See Cook on Corporations, vol. 1, sec. 2; *Breitung v. Lindauer,* 37 Mich. 217; *Gregory v. German Bank,* 3 Colo. 332, 25

Am. Rep. 760; *Fourth Nat. Bank v. Francklyn,* 120 U. S. 747, 7 Sup. Ct. 757, 30 L. Ed. 825; *Merchants' Ins. Co. v. Hill,* 12 Mo. App. 148; Id., 86 Mo. 466.

Quoting from the case of *Corry v. Baltimore,* 196 U. S. 466, at page 477, 25 Sup. Ct. 297, at page 300, 49 L. Ed. 566, at page 562, it is said:

"Whilst it is true that the liability of the non-resident stockholders in the case before us, as enforced by the laws of Maryland, was not directly expressed in the charter of the corporation, it nevertheless existed in the general laws of the state at the time the corporation was created, and, be this as it may, certainly existed at the time of the extension of the charter. This is particularly the case since the Constitution of Maryland for many years prior to the extension of the charter of the transportation company contained the reserved right to alter, amend, and repeal. From all the foregoing, it resulted that the provisions of the general laws and of the Constitution of Maryland were as much a part of the charter as if expressly embodied therein."

Quoting from the case of *Sherman v. Smith,* 1 Black, 587, at page 593, 17 L. Ed. 163, at page 167:

"According to the fifteenth section, the association was authorized to establish a bank of discount, deposit, and circulation, 'upon the terms and conditions, and subject to the liabilities, prescribed in this act.' It was not competent for the association to organize their bank upon any other terms or conditions, or subject to any other liabilities, than those prescribed in the general charter. Now, the thirty-second section, which reserved to the Legislature the power to alter or repeal the act, by necessary construction, reserved the power to alter or repeal all or any one of these terms and conditions or rules of liability prescribed in the act. The articles of association are dependent upon, and become a part of, the law under which the bank was organized, and subject to alterations or repeal, the same as any other part of the general system."

In the case of *Maine Central Rd. Co. v. State of Maine,* 96 U. S. 499, 24 L. Ed. 836, Mr. Justice Field, delivering the opinion, stated:

"It follows that the limitation of the taxing power of the state to a portion of their net income prescribed in the charters of the old companies ceased upon their consolidation into the Maine Central. When this new company came into existence, it became subject to the provisions of the general law of 1831, which declared that any act of incorporation subsequently passed should at all times thereafter 'be liable to be amended, altered, or repealed,' etc."

From the statutes and the authorities quoted it is celar that every provision of the General Banking Act of 1899 applicable to the banking bosiness became a part of and entered into the charter of the Columbia Bank & Trust Company.

On May 26, 1908, there was passed by the Legislature a general law which is properly termed a revising act or a substitution for all the laws governing the banking business in Oklahoma. A quotation from a few of these provisions applicable to this case will show that the defendant is equally liable under this law after it took effect. We must not lose sight of the fact that on the date this law took effect the Columbia Bank & Trust Company under the admitted facts was engaged in the general banking business and was, in the usual acceptance of that term, a banking corporation, and so continued to do a general banking business. This law, so far as applicable to the business carried on by the Columbia Bank & Trust Company, must be regarded as an amendment to its charter.

Some of the provisions of the Banking Act of May 26, 1908, applicable here, are as follows:

"And provided, further, that all banking institutions now organized as corporations doing business in this state are hereby permitted to continue said business as at present incorporated; but in all other respects their business, and the manner of conducting the same, and the operation of said bank, shall be carried on subject to the laws of this state, and in accordance therewith; And provided, further, that no bank, except those that have complied with or that may be organized under the laws of this state

relating to trust companies, shall engage in any business other than as authorized by this act. And whenever it shall appear from the reports made for the preceding year by such banking corporation that the total deposits are more than ten times the amount of its paid up capital and surplus, deposits of other banks not included, the Bank Commissioner shall have power, and it shall be his duty, to require such bank within thirty days to increase its capital or surplus to conform to the provisions of this chapter, or shall cease to receive deposits."

This provision authorized banks organized under the Trust Company Act and those organized under the general banking law of Oklahoma to continue business on the same basis and subject to all the provisions of the banking law.

Section 320, Comp. Laws 1909, reads:

"There is hereby levied an assessment against the capital stock of each and every bank and trust company organized or existing under the laws of this state for the purpose of creating a depositors' guaranty fund equal to five per centum of its average daily deposits, during its continuance in business as a banking corporation."

This section also recognizes the right of banks organized under the trust company law to continue in business with the same rights and authority and be governed by the same laws as other banks organized thereunder.

Section 323 provides:

"In the event that the Bank Commissioner shall take possession of any bank or trust company which is subject to the provisions of this act, the depositors of said bank or trust company shall be paid in full, and when the cash available or that can be made immediately available of said bank or trust company is insufficient to discharge its obligations to the depositors, the said banking board shall draw from the depositors' guaranty fund and from additional assessments, if required, as provided in section 2 (320 of Comp. Laws 1909), the amount necessary to make up the deficiency, and the state shall have for the benefit of the depositors'

guaranty fund a first lien upon the assets of said bank or trust company and all liabilities against the stockholders, officers, and directors of said bank or trust company and against all other persons, corporations, or firms such liabilities may be enforced by the state for the benefit of the depositors' guaranty fund."

Part of section 326 reads:

"After the Bank Commissioner shall" take charge or "possession of any bank or trust company which is subject to the provisions of this act," etc.

Section 327 provides:

"Any bank or trust company which has complied with the provisions of this act shall be eligible to act as a depository of state funds, of any fund under the control of the state or any officer thereof, upon compliance with the laws of this state relating to the deposit of public funds."

Section 286 provides:

"Shareholders of every bank organized under this act shall be additionally liable for the amount of stock owned, and no more."

All of these provisions were enacted by the Legislature and became amendments to and a part of the charter of the Columbia Bank & Trust Company as fully and to the same extent as if they had been incorporated into the charter itself, and the bank, through its officers and stockholders, by accepting the profits and benefits and operating thereunder, necessarily accepted all of the burdens and assumed all the obligations imposed by said law.

Section 285, Comp. Laws 1909, provides:

A "violation of any of the provisions of this act by the officers or directors of any bank organized or existing subject to the laws of this state shall be sufficient cause to subject the said bank to be closed and liquidated by the Bank Commissioner and for the annullment of its charter."

Section 293, Comp. Laws 1909, of the provisions of the act of 1908, reads:

"It shall be unlawful for any individual, firm or corporation to receive money upon deposit or transact a banking business except as authorized by this act, or by the laws relating to trust companies. Any person violating any provisions of this section, either individually or as an interested party, in any association or corporation, shall be guilty of a misdemeanor and upon conviction thereof shall be fined in a sum not less than three hundred dollars nor more than one thousand dollars, or by imprisonment in the county jail not less than thirty days nor more than one year, or both such fine and imprisonment."

It will be noted that the last section is practically the same as section 17 of the General Banking Act of 1899, *supra,* but amended by adding the following words: "Or by the laws relating to trust companies."

Under section 17 of the 1899 Banking Act, *supra,* a trust company could not then receive money upon deposit without complying with all the provisions of the general banking law. By this amendment a trust company bank, under its charter and under the provisions of the law relating to trust companies, could receive money on deposit without complying with the provisions of the banking law, but could not engage in the banking business wiehout complying with the provisions of this law; otherwise there would be no law governing the banking business carried on by a bank organized under the trust company law.

The following authorities sustain the proposition that the statutes quoted became a part of the charter of the Columbia Bank & Trust Company without any formal action on the part of its officers:

Volume 2, Cook on Corporations, sec. 497, reads:

"A statute passed subsequent to the granting of a charter and increasing the liability of the stockholders on the stock for the

debts already incurred is unconstitutional and void, unless the Legislature has reserved the right to alter or amend the charter. Under such a reservation the statute is legal and binding, although there are limits even to this reserved power, as will be shown hereafter"—citing *Ochiltree v. Railroad Co.,* 21 Wall. 249, 22 L. Ed. 546; *Smathers v. Western Bank,* 135 N. C. 410, 47 S. E. 893; *Stieffel v. Tolhurst,* 67 App. Div. 521, 73 N. Y. Supp. 1034; *McKee v. Chautauqua Assembly,* 130 Fed. 536, 65 C. C. A. 8.

Section 497, same volume:

"A statutory liability may be applied to existing corporations if they continue to do business"—citing *Gamewell v. Fire Ins. Co.,* 116 Ky. 759, 76 S. W. 862; *Bay State Gas Co. v. State,* 4 Pennewill (Del.) 497, 56 Atl. 1120; *Germer v. Triple State Co.,* 60 W. Va. 142, 54 S. E. 509.

Section 501:

"Under this reserved power, however, the Legislature, it is held, may impose a statutory liability upon stockholders after they have been incorporated and have gone into business under a charter which does not impose such liability. The exercise of this power by the Legislature in such a case is held to be only a repeal of part of the corporate franchise"—citing *Williams v. Hall,* 108 Ky. 21, 55 S. W. 706; *McGown v. McDonald,* 111 Cal. 57, 42 Pac. 418, 52 Am. St. Rep. 149; *Bissell v. Heath,* 98 Mich. 472, 57 N. W. 585; *South Bay Co. v. Gray,* 30 Me. 547; *Sleeper v. Goodwin,* 67 Wis. 577, 31 N. W. 335.

In the case of *New York N New England R. R. Co. v. Bristol,* 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269, the court, speaking through Mr. Justice Fuller, states:

Where a statute provides that any corporation accepting its benefits thereby waives its exemptions from the power of the Legislature to amend its charter, the acceptance of the benefits of such a statute thereby works that change without any formal action on the part of the board of directors or stockholders.

In the case of *L. & N. R. R. Co. v. State,* 154 Ala. 156, 45 South. 296, it is stated:

A stockholder may be estopped from objecting to an amendment by his express or implied acquiescence therein. Any acts indicating an acceptance by him of the amendment bind him and bar his suit. Acquiescence may sometime grow out of his silence or delay under circumstances that called on him to dissent if he so intended. 2 Cook on Corporations, secs. 503, 504, and a long list of cases cited.

Quoting from 10 Cyc. p. 215:

"The acceptance of an amendment to a charter need not be proved by formal corporate action, but may be established by evidence of users thereunder (that is to say, by action by the corporation which could not be taken properly but for the amendment); and it may be inferred from such acts or omissions as would raise a presumption of acceptance in the case of a natural person. A presumption of acceptance arises where the grant is beneficial to the corporation or to the shareholders. * * * Such an acceptance may be shown by showing the exercise by the corporation of the powers conferred by the amendment, by showing that the corporation has done particular corporate acts authorized by the amendment, but without which said acts would not have been authorized, by the fact that the officers of the corporation have exercised the powers conferred by it, or in general by any acts or omissions done or had by the corporation which are inconsistent with any hypothesis save that of an acceptance of the amendment." A long list of cases cited.

And again:

"Where the new grant is beneficial in its aspect, it is thought very little is required to. find a presumption of acceptance."

"And this rule applies when the powers are conferred by a general law which is declared applicable to any one of a class of corporations that may accept its provisions." *Goodin v. Evans,* 18 Ohio St. 150; *Kenton Co. v. Bank Lick Turnp. Co.,* 10 Bush. (Ky.) 529; *U. S. Bank v. Dandridge,* 12 Wheat. 64, 6 L. Ed. 552; *People v. Law,* 34 Barb. (N. Y.) 494; *Beals v. Benjamin,* 29 How Prac. (N. Y.) 101.

Quoting from the case of *St. John v. Iowa Bldg. & Loan Ass'n,* 136 Iowa, 455, 113 N. W. 866, 15 L. R. A. (N. S.) 508, the court states:

"Defendant had two courses open to it: One to quit business and settle up its affairs, and the other to comply with the law, amend its articles, and give to its members the benefit of the new law. It chose the latter course, and, having done so, it is in no position to say that the act under which we did these things is unconstitutional and void. *Durfee v. Old Colony & F. Co.,* 5 Allen [Mass.] 230; *Greenwood v. Union Freight R. Co.,* 105 U. S. 13, 25 L. Ed. 961; *Union P. R. Co. v. U. S.,* 99 U. S. 700, 25 L. Ed. 496. * * * Plaintiff expressed no dissent, but allowed the association to go ahead under the amended articles, incurring additional liabilities, paying their premiums, interest, and dues, and taking no steps to enforce their original contract. Under such circumstances, there was either an implied acceptance, or plaintiffs are estopped from denying an acceptance of the provisions of the new or amended articles. *Chubb v. Upton,* 95 U. S. 765, 24 L. Ed. 525; *Danbury & N. R. R. Co. v. Wilson,* 22 Conn. 435; *Sparrow v. Evansville & O. R. R.,* 7 Ind. 369; Moreover, as the amendment in this case was beneficial to the members, assent will be presumed. *Commonwealth ex rel. v. Cullen,* 13 Pa. 133, 53 Am. Dec. 450; *Bangor O. & M. Co. v. Smith,* 47 Me. 34. * * * Further claim is made that, as defendant's amended articles do not refer to existing contract, they were in no manner changed, and the new law does not apply. This position is also unsound, for it was the Legislature which made the change by the act in question, and, as defendant chose to accept the provisions of that act and to conduct its business thereunder, it cannot be heard to say that existing members may not take advantage of the law."

If, when the General Banking Law of 1908 took effect, the Columbia Bank & Trust Company had surrendered its former charter and secured formal articles of incorporation under this law, one would question the liability of defendant in view of the admitted facts. The question arises: Under the law, was this formal act necessary? The officers and stockholders of this bank at the time this law went into effect were engaged in the general banking business as fully and to the same extent as other banking corporations in the state, which they could continue only by conforming to all of the provisions of this law, or could cease the banking business and confine its business solely to that

permissible and governed by the Trust Company Law. Under the law, every provision of the General Banking Act applicable to banking entered into and became a part of the charter under which this bank was operating. In fact, the defendant's counsel in his oral argument conceded that the charter of the corporation must be read and construed in connection with the general laws upon the subject. This doctrine is clearly upheld in the case of *Memphis Bank v. State of Tennessee,* 161 U. S. 186, 16 Sup. Ct. 468, 40 L. Ed. 664, for the court stated:

"The effect of a state law giving to a company, having in its charter the right to receive money in trust or otherwise, the right to do a banking business is to grant a new charter to the extent of granting banking powers, and the company, if it avails itself of the privileges mentioned in such law, takes them subject to the constitution and laws then in force."

The Columbia Bank & Trust Company received all of the privileges, the protection, and the benefits under this law as fully as if it had secured and filed formal articles of incorporation thereunder, and why should it and its stockholders and officers not be held to have assumed the burdens and assented to the liabilities imposed therein? The difference is a mere matter of form; the substance is the same.

One of the reasons insisted upon by counsel for the defendant upon the petition for rehearing why section 37 of the General Banking Laws of 1899 did not apply to the stockholders is that this section only provides that the "corporation" shall be considered as doing a banking business and shall be amenable to all of the provisions of this act, and hence it was not broad enough to include stockholders; that the corporation is a legal entity, distinct and separate from the stockholders. And this contention is upheld and adopted in the opinion of the court. While, as a general rule, and for many purposes, the corporation is regarded as a separate legal entity from that of the stockholders, yet in recent years, since corporations have so multiplied and grown into

every avenue and fiber of our commercial life, and often the incorporators who are the life and strength, and through whom the corporation only can and must act, have sought to take shelter behind the corporation and use it as a means of protection and a shield to perpetrate many wrongs and to hinder and defeat justice, courts have had a tendency to disregard this distinction and denominate it a mere legal fiction; and there is much reason for this position.

Speaking on this subject, Mr. Coon on Corporations, sec. 6, states:

"But there are occasions where the courts will ignore the corporate existence and will hold that its acts are the acts of its stockholders, and *vice versa*, the same as in a partnership. The New York Court of Appeals said: 'We have of late refused to be always and utterly trammeled by the logic derived from the corporate existence where it only serves to distort or hide the truth.' *Anthony v. American Glucose Co.*, 146 N. Y. 407 [41 N. E. 23]."

Mr. Thompson in his work on Corporations, vol. 1, sec. 10, speaking of the separate entity of corporations from stockholders states:

"This separate existence is to a certain extent a legal fiction. Whenever necessary for the interest of the public or the protection or enforcement of the rights of the membership, courts will disregard this legal fiction and operate both upon the corporation and the persons composing it." See Morawatz on Private Corporations, sec. 227.

The Supreme Court of Ohio, in the case of *State ex rel. v. Standard Oil Co.*, 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, 34 Am. St. Rep. 541, recognized this distinction when it stated:

"So long as the proper use is made of the fiction that a corporation is an entity apart from its stockholders, it is harmless, and, because convenient, should not be called in question; but where it is urged to an end subversive of its policy, or such is the

issue, the fiction must be ignored, and the question determined, whether the act in question, though done by shareholders (that is to say, by the persons united in one body), was done simply as individuals and with respect to their individual interests as shareholders, or was done ostensibly as such, but, as a matter of fact, to control the corporation and effect the transaction of its business in the same manner as if the act had been clothed with all the formalities of a corporate act."

And again the court continued:

Other courts have recognized this doctrine that the so-called legal entity of a corporation is artificial and that the corporation is a fictitious person, and will be so recognized and treated when necessary to the ends of justice. *State v. Milwaukee R. R. Co.*, 45 Wis. 579. The New York Court of Appeals recognized this doctrine and said of it: "The abstract idea of a corporation, the legal entity, the impalpable and intangible creation of human thought, is itself a fiction, and has been appropriately described as a figure of speech"—citing *People v. North River Sugar Ref. Co.*, 121 N. Y. 582, 24 N. E. 834, 9 L. R. A. 33, 18 Am. St. Rep. 843; *Anthony v. American Glucose Co.*, 146 N. Y. 407, 41 N. E. 23; *Des Moines Gas Co. v. West*, 50 Iowa, 16; *Kellog v. Bank*, 58 Kan. 43, 48 Pac. 587; 62 Am. St. Rep. 596; *C. R. R. Co. v. Miller*, 11 Mich. 166, 51 N. W. 981; *Terhune v. Bank*, 45 N. J. Eq. 344, 19 Atl. 377; *Booth v. Bunce*, 33 N. Y. 139, 88 Am. Dec. 372; *Brundred v. Rice*, 49 Ohio St. 640, 32 N. E. 169, 34 Am. St. Rep. 589; *First Nat. Bank v. Trebein*, 59 Ohio St. 316, 52 N. E. 834; *Web Co. v. Dienelt*, 133 Pa. 585, 19 Atl. 428, 19 Am. St. Rep. 663.

This court cannot afford to go on record announcing an unconditional rule to be applied under all circumstances, to the effect that a corporation is a legal entity, separate and distinct from its stockholders and officers, as the language in the opinion would import.

In this case it makes but little difference whether that rule is adhered to or not, so far as the rights of the parties are concerned, as they could and should be disposed of upon other grounds; yet it may well be considered a step towards putting in

force a policy in this state which, if followed up, might in years to come result in much harm.

There is yet another well-recognized principle of law, somewhat related to those already referred to, which if adhered to must render the contention of the defendant untenable. It is settled beyond controversy that where there is a law authorizing a corporation to engage in the banking business, and parties organize themselves together, assume the status of a corporation, and hold themselves out to the world as such, those who contract and deal with them as such corporation, when sued on such contract, will be estopped from defending on the ground that they were not incorporated, or that it was irregularly organized; and likewise those holding themselves out as an organized corporation are estopped from defending or asserting that, as a matter of fact, they are not incorporated. It has been asserted that there is no contention of this kind in the case at bar, and therefore this argument and authority is inapplicable. It is contended, however that notwithstanding the officers and stockholders of the Columbia Bank & Trust Company engaged in the banking business the same as other state banks, and conformed to all of the provisions of the banking law during the time it was in existence, yet, inasmuch as it was organized under the Trust Company Act, its stockholders cannot be held liable under the provisions relating to the double liability of stockholders, under the general banking law. In principle there is no reason why the law of estoppel should not apply to the stockholders in the latter instance as in the first.

It is clear from the statute that, notwithstanding the Columbia Bank & Trust Company was organized under the Trust Company Act, yet it is equally clear that, under the law relating to banking, it was authorized to engage in the general banking business the same as other state banks. The officers and stockholders did actually conduct a general banking business during its existence, in conformity to the general banking laws. It and its

Form 9.

officers and stockholders received the protection of this law and contributed to the support of the guaranty fund; they permitted the bank commissioner to pay its debts from the guaranty fund, which had been contributed by all the state banks, to the amount of at least $200,000 and how much more the record does not disclose. Having received the protection, the fruits, and benefits of this law, and having operated under same, when the state seeks to collect the liability provided for thereunder they should be estopped from asserting that they were not organized under the banking law, but were only liable as provided for in the Trust Company Act. The principle of estoppel has been enforced in every court against individuals assuming similar positions towards each other, and has been enforced by this court against individuals under the same state of facts, and why it should not be applied in the present case I am unable to discover. This doctrine is sound, just and equitable, and supported by both reason and authority.

In the case of *Casey v. Galli*, 94 U. S. 680, 24 L. Ed. 170, the Supreme Court of the United States laid down the rule as follows:

"There is another ground upon which both pleas must be held bad. Where a shareholder of a corporation is called upon to respond to a liability as such, and where a party has contracted with a corporation and is sued upon the contract, neither is permitted to deny the existence or the legal validity of such corporation. To hold otherwise would be contrary to the plainest principles of reason and of good faith, and involve a mockery of justice. Parties must take the consequences of the position they assume. They are estopped to deny the reality of the state of things which they have made  *  *  *  and upon which others have been led to rely. Sound ethics require that the apparent, in its effects and consequences, should be as if it were real, and the law properly so regards it."—citing *Eaton v. Aspinwall*, 19 N. Y. 119; *Cooper v. Shaver*, 41 Barb. (N. Y.) 151; *Camp v. Byrne*, 41 Mo. 525; *Railroad v. Wilson*, 22 Conn. 435; *Ellis v. Schmock*, 5 Bing. 521; *McFarlan v. Ins. Co.* 4 Denio (N. Y.) 392; *Rector v. Lovett*, 1 Hall (N. Y.) 213; *Wolcott v. Dooley*, 4

Allen (Mass.) 402; *Eppes v. Railroad,* 35 Ala. 33; *Hamtramck v. Bank,* 2 Mo. 169; *Jones v. Type Foundry,* 14 Ind. 89; *Med. Int. Co. v. Harding,* 11 Cush. (Mass.) 285; *Hughes v. Bank,* 5 Litt. (Ky.) 47; *Nav. Co. v. Neal,* 3 Hawks (N. C.) 520.

Quoting from the case of *Aultman v. Waddle,* 40 Kan. 201, 19 Pac. 734:

"Further than that, these stockholders are not in a position to impeach the irregularity of the organization of the corporation, or to deny their liability as stockholders herein. Having organized themselves as a corporation, transacted business, and held themselves out to the world as such corporation, they cannot, when proceeded against, * * * set up as a defense that the preliminary steps in the organization were irregular"—citing Thompson on Liability of Stockholders, sec. 887.

1 Thompson on the Liability of Stockholders, sec. ——:

"Where the corporation whose existence is to be proved operates so as to derive its franchise from the general law, proof of its existence for the ordinary purpose of litigation is sufficiently made by showing a general law under which it might exist, and by showing the exercise on its part of a franchise which it might properly have acquired by an organization under the general law."

Many more authorities might be cited, but it is unnecessary.

In principle, there is no reason why the rule of estoppel should not be applied to the officers and stockholders of the Columbia Bank & Trust Company and the defendant estopped from defeating the liability sought to be recovered by reason of the acts of the officers and stockholders in this banking institution having conducted its banking business under the general law, of which this provision is a part.

The opinion of the court upon the petition for rehearing proceeds upon a wrong theory, overlooks the basic principles underlying the points involved, and the conclusion reached is erroneous.

The judgment of the trial court should be reversed.