(64 Misc. Rep. 347.)

NEW YORK AIR BRAKE CO. v. INTERNATIONAL STEAM PUMP
CO. et al.

(Supreme Court, Special Term, New York County.   August, 1909.)

1. CORPORATIONS (§ 506*)—ACTIONS—BREACH OF CONTRACT—PARTIES.

Where the capital stock of two manufacturing companies is owned by a third, and they have common officers and common offices and act through a common agent, as to one who contracts with the former corporations with knowledge of the relations existing, they are deemed separate entities, and cannot all three be joined in a single action for damages for breach of separate contracts made with each of the two former corporations in its corporate name.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 506.*]

2. CORPORATIONS (§ 225*)—BREACH OF CONTRACT—LIABILITY OF OWNER OF CORPORATE STOCK.

Where the capital stock of two manufacturing corporations is owned by a third, the latter is not liable for breach of contract by one of the former corporations, any more than any other stockholder would be.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 225.*]

Action by the New York Air Brake Company against the International Steam Pump Company and others.   Demurrers to complaint sustained.

Whitridge, Butler & Rice, for plaintiff.
Leventritt, Cooke & Nathan, for defendants.

GREENBAUM, J.   The plaintiff brings this action against three defendant corporations to recover damages claimed to have been sustained by reason of the breach of certain alleged guaranties or obligations of said defendants arising out of an agreement for the installation of a gas plant, consisting of a 250 horse power gas engine and a No. 20 American Crossley suction gas producer, in accordance with specifications prepared by one F. P. Thorp, acting as the agent of all the defendants.   The defendants are the International Steam Pump Company (for convenience hereinafter designated as the "International Company"), a foreign corporation; the Snow Steam Pump Company (hereinafter designated as the "Snow Company"), a domestic corporation; and the Power & Mining Machinery Company (hereinafter designated as the "Power Company"), a foreign corporation. The complaint alleges that the International Company was and is the owner and holder of all the capital stock and of the property and business of both the Snow Company and Power Company; that the International Company "carried on and still carries on the business of manufacturing gas engines at Buffalo, N. Y., formerly carried on by the Snow Works," and that "such gas engine business, while nominally carried on by and for account of the Snow Works, is and was in reality carried on by and solely for account and benefit of the defendant International Company"; that the International Company "carried on and still carries on the business of manufacturing gas generators for gas engines formerly carried on by the Power Company," and that "such gas generator business, while carried on in the name of the Pow-

er Company, was in reality and in fact carried on by and solely for account of the International Company"; that at all of the times mentioned in the complaint the said three defendants "occupied and still occupy common executive offices in the city of New York, and have common officers and boards of directors," and that neither said Snow Company nor said Power Company had or has a "real corporate existence separate and apart from the International Company; and that all of the interests and engagements made by the Snow and Power Companies were in fact contracts and engagements of the International Company, for whose sole benefit, and at whose sole instance, they were made." The complaint further·alleges:

"Fifth. In or about the month of September, 1906, the defendant International Company caused the defendant Power Company to submit to the plaintiff proposals purporting to be made by the Power Company, for the installation in the plaintiff's works at Watertown, N. Y., of a gas engine plant, consisting of a 250 horse power gas engine and a No. 20 American Crossley suction gas producer, in accordance with specifications prepared by one F. P. Thorp, acting as the agent of all the defendants herein. Thereafter, and on or about September 25, 1906, the plaintiff, in a letter addressed to the defendant Power Company, accepted in writing the proposals of said defendant, and subsequently, and in October, 1906, the said Thorp, as the agent of all the defendants, submitted to the plaintiff two separate forms of agreement for execution by the plaintiff as follows: An agreement, bearing date October 9, 1906, purporting to be with the Snow Works, which recited the proposal of the Power Company above referred to, and purported to express the terms upon which the Snow Works would deliver the gas engine contracted for by the plaintiff. Also an agreement bearing date September 10, 1906, purporting to be made with the Power Company, which expressed the terms upon which the Power Company would deliver the gas producer at the plaintiff's works. Each of said agreements so submitted by Thorp, as the agent of all the defendants, was accepted by the plaintiff, by referring to plaintiff's letter of September 25, 1906, addressed to the defendant Power Company."

The complaint then alleges the conclusion that the two separate writings "were the result of plaintiff's negotiations with the said Thorp, as the agent of all the defendants, and as a single joint undertaking by all the defendants for the installation of a complete gas engine plant in the plaintiff's factory at Watertown, of the guaranteed capacity set forth in the said agreement, and at the prices therein mentioned," and then contains appropriate allegations tending to establish a breach of the contracts and the resultant damages. The defendants the Snow Company and Power Company separately demur to the complaint upon the ground that different causes of action have been improperly united, and the defendant the International Company demurs upon the same ground, and upon the additional ground that the complaint does not state facts sufficient to constitute a cause of action.

Stripped of ingeniously interwoven allegations of conclusions of law and fact, with which the complaint abounds, it is apparent that the plaintiff entered into two separate contracts, each complementary to the other, for the construction of a gas plant, the one for a portion of the work with the Snow Company and the other for the remaining portion with the Power Company. It may also be assumed that the International Company was cognizant of and deeply concerned with the contracts, by reason of the fact that it owned the capital stock of both companies, and as such owner was the beneficial, although not

technically the legal, owner of the assets of both companies. The plaintiff deliberately entered into separate agreements with the Snow and Power Companies for different parts of the work, as there is no allegation or claim that it was ignorant of the relations between the three defendant corporations, and, as a matter of fact, it here seeks to hold each of these three corporations liable for damages for breach of their contracts. The International Company is not sued as the undisclosed principal of the other companies, nor are there any allegations that the other companies acted as the agents for the International Company. On the contrary, it is asserted that one Thorp was the agent of each of the defendant corporations, and it is virtually alleged that each of the corporations has a set of officers, albeit the same persons are the officers of each corporation, and the said corporations have common offices in the city of New York. We have thus a state of facts which shows the plaintiff knew that these three corporations existed as separate entities, closely linked to each other through a common ownership of their capital stock.

The plaintiff seeks to avoid the logical consequences of the situation by invoking the wholesome doctrine enunciated in Anthony v. American Glucose Co., 146 N. Y. 407, 41 N. E. 23, in which Finch, J., speaking for the court, says:

"We have of late refused to be always and utterly trammeled by the logic derived from corporate existence where it only serves to distort or hide the truth, and I think we should not hesitate in this case to reject the purely technical defense attempted."

In that case the American Glucose Company had been organized to take over the property of certain corporations, in one of which the plaintiff held stock, and the plaintiff sued the defendant to obtain a delivery of the amount of stock to which he was entitled under the amalgamation. The Glucose Company sought to escape liability on the plea that its contracts had been made with the constituent companies and not with the stockholders, and that it had turned over the shares of stock which plaintiff demanded to the corporation in which plaintiff was a stockholder, and that his remedy was against that corporation. The Court of Appeals brushed aside this defense as extremely technical, holding that the absorption of the corporations had been in part accomplished by the written approval of the stockholders, including the plaintiff, and after the transfer of their assets to the defendant the constituent corporations were virtually moribund, even though not formally dissolved.

In the case at bar the plaintiff itself deliberately treated with the Snow and Power Companies as active going concerns, and still pursues them as existing corporations. Doubtless, in a case with the unique features here present, justice would be hastened if we enjoyed a system of procedure which would enable the courts in one action to determine the rights of each of the parties and decree judgment accordingly, much in the same way as equity will decree the rights of different parties in a controversy in which claims arise to various portions of a given fund. But, under our cumbersome and ofttimes unnecessary technical procedure, I see no alternative but to hold the plain-

tiff to the well-settled practice that a separate cause of action against one defendant cannot be joined with a separate cause of action against another defendant. It is true the plaintiff asserts a joint liability, but the alleged facts repel the conclusion of the pleader. Assuredly the Power and the Snow Companies were not joint contractors for the entire work of installation of a gas plant. There is no partnership or joint venture alleged between the three defendants. As for the International Company, its mere ownership of the capital stock of the two other companies makes it no more liable than would be private individuals were they the owners of this stock, and, if it be assumed that in some way the International Company acted as agent for the other companies, no liability on its part would result therefrom, where, as here, it is to be assumed that plaintiff understood that the International Company acted as such agent. If, on the other hand, the plaintiff's contract was made with the International Company, the plaintiff's remedy would be against this company alone. It is difficult to reconcile a claim against the International Company, in view of the separate agreements with the other defendants, and in the absence of any averments of fraud or mutual mistake. The difficulty is that plaintiff, unwisely perhaps, entered into distinct contracts with separate corporations for different parts of the work, and, as a consequence, it must seek any redress to which it may be entitled by pursuing the particular corporation with which it contracted.

The demurrers will be sustained, with costs to each of the demurrants, and with leave to plaintiff, upon payment of costs, to plead over.

Demurrers sustained.