ROBERT H. GARDINER & another, executors, *vs.* TREASURER and RECEIVER GENERAL.

Suffolk.   November 9, 1915. — December 15, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Tax,* On legacies and successions.   *Corporation,* Disregarding corporate form in seeking substance of transaction.  *Power.*

Under St. 1909, c. 490, Part IV, § 1, and before the enactment of St. 1912, c. 678, shares of corporations and voluntary associations organized under the laws of this Commonwealth and of national banks situated in this jurisdiction which were disposed of by the will of a non-resident were subject to a legacy and succession tax.

The principle stated above applied to such shares held by trustees appointed and residing in this Commonwealth which were disposed of by the donee of a power of appointment created by will in this Commonwealth, who died as a resident of another State and exercised the power by his will proved in such other State.

Citations by BRALEY, J., illustrating the doctrine of looking beyond a corporate form where this becomes necessary for the purpose of determining the true character of a transaction.

Where trustees, who were appointed in this Commonwealth and resided here, held shares in Massachusetts corporations, the disposal of which by the will of a non-resident under St. 1909, c. 490, Part IV, § 1, before the enactment of St. 1912, c. 678, was subject to a legacy and succession tax, and before the death of such non-resident such trustees had transferred all such shares to a Maine corporation, organized and controlled by themselves, receiving in return contracts by which the Maine corporation agreed either to return to the trustees the identical shares or to furnish "an equal number of similar shares" on demand, and, until payment for or retransference of the shares, to pay or assign to the trustees the equivalent of all dividends either of income or capital paid or distributed upon such shares, and where it appeared that it was the desire and purpose of the trustees, in forming the Maine corporation and causing it to issue the contracts in exchange for the shares in the Massachusetts corporations, to bring about the result that persons to whom such contracts were issued should be subject to inheritance taxes upon such contracts only in

the State of Maine and not in this Commonwealth, and it did not appear that there was any statute of the State of Maine imposing a tax on the disposition of such shares by will, it was *held*, that this court would look beyond the corporate form into the substance of the transaction by which in reality the shares in Massachusetts corporations continued to belong to the trustees after their formal transfer to the Maine corporation, and that accordingly the disposal of such shares by the exercise of a testamentary power by one who at the time of his death was a resident of the State of Maine was subject to a legacy and succession tax under St. 1909, c. 490, Part IV, § 1. RUGG, C. J., dissenting.

PETITION, filed in the Probate Court for the county of Suffolk on January 18, 1915, under St. 1909, c. 490, Part IV, § 20, by the executors of the will of Lawrence Tucker, late of Andover in the county of Oxford in the State of Maine, against the Treasurer and Receiver General, for the abatement of a legacy and succession tax of the amount of $1,189.91 certified to be due and payable on January 13, 1915, on certain contracts of the Gardiner Investment Company disposed of by the will of Lawrence Tucker by the exercise by him of powers of appointment contained in the wills of his father and mother, William W. Tucker and Susan E. Tucker, late of Boston.

Attached to the petition was the following copy of one of the contracts in question with the accompanying certificates, the other contracts being alleged to be in like form:

"Gardiner Investment Company.

Contract No. 659

"THIS certifies that Robert H. Gardiner & Robert H. Gardiner, Jr., Trustees under the will of William W. Tucker for Lawrence Tucker hereinafter called the promisee, have sold to the Gardiner Investment Company of Gardiner, Maine, hereinafter called the Company, Four 4 shares of Second National Bank of Boston

"In consideration of said executed sale said Company agrees with the Promisee as follows:

"The Company will pay to the Promisee on demand after reasonable notice and surrender of this contract and attached certificate the fair market value at the time of such demand, less the usual expenses of sale, of an equal number of similar shares, such value to be fixed at the election of the Company by a public or private sale by the Company or by an appraisal by a disinterested person appointed by the Company and the promisee.

"Until such payment the Company will pay to the Promisee the

equivalent of all dividends in money accrued and paid after this date on an equal number of similar shares, and on demand after reasonable notice, the market value, fixed as above, at the time of such demand, less the usual expenses of sale, of all rights of subscription, scrip, stock dividends, and other rights not in the form of money, accrued and issued after this date on an equal number of similar shares.

"Until the full performance of the foregoing obligations, the Company will keep in the custody of the Maine Trust and Banking Company of Gardiner, Maine, certificates owned by the Company, for an equal number of similar shares, and the Promisee agrees to protect the Company from all liability now or hereafter on account of its ownership of said shares. On any default of the Company hereunder evidenced by a protest of the Promisee through a Notary Public, the Company hereby irrevocably constitutes and appoints the Maine Trust and Banking Company its true and lawful attorney with power of substitution, for it and in its name and behalf to sell, assign and transfer any such shares standing in its name, and pay the proceeds to the Promisee.

"The Company may at any time before default, on reasonable notice, pay its obligations hereunder without demand of the Promisee, and upon full performance shall be entitled to receive from the Promisee a full discharge hereunder and a surrender of this contract and the attached certificate.

"In witness whereof the Company has caused these presents to be signed by its president, or its treasurer, and its corporate seal to be hereto affixed and to be attested by its clerk, this 15″ day of September A. D., 1910.

"Gardiner Investment Company,

[Seal of Gardiner Investment Company]

by Robert H. Gardiner, Jr.

Treasurer.

"Attest:

Ralph A. Bartlett

Clerk."

"Certificate of Deposit.

"The Maine Trust and Banking Company of Gardiner, Maine, hereby acknowledge the receipt from the Gardiner Investment

Company of a certificate or certificates in the name of said Gardiner Investment Company, representing Four 4 shares of Second National Bank of Boston deposited on account of contract numbered 659 of said Gardiner Investment Company and Robert H. Gardiner and Robert H. Gardiner, Jr., Tr. Promisee, which certificates or others representing an equal number of similar shares are to be kept in the exclusive control of this company and redelivered to said Gardiner Investment Company only on the surrender of this certificate duly released by the Promisee. Upon duly protested default of said Gardiner Investment Company under the terms of said contract, the Maine Trust and Banking Company will sell the shares referred to therein under the power of attorney contained in said contract from said Gardiner Investment Company and pay the proceeds to the Promisee upon surrender of this receipt.

"Maine Trust and Banking Company,

[Seal of Maine Trust and Banking Company]

by Robert W. Perkins
Secretary."

"Certificate of Deposit.

"The Maine Trust and Banking Company of Gardiner, Maine, hereby acknowledges the receipt from the Gardiner Investment Company of a certificate or certificates in the name of said Gardiner Investment Company, for the shares referred to in the above contract, which certificates or others representing an equal number of similar shares are to be kept in the exclusive control of this Company and redelivered to said Gardiner Investment Company only on the surrender of this certificate duly released by the Promisee. Upon duly protested default of said Gardiner Investment Company under the terms of said contract, the Maine Trust and Banking Company will sell the shares referred to therein under the power of attorney contained in said contract from said Gardiner Investment Company and pay the proceeds to the Promisee upon surrender of this receipt.

"Maine Trust and Banking Company,

[Seal of Maine Trust and Banking Company]

by Robert W. Perkins
Secretary."

The answer of the Treasurer and Receiver General concluded as follows:

"And further answering he says that the Gardiner Investment Company was formed by Robert H. Gardiner and Robert H. Gardiner, Jr., and the form of contract, and the scheme for holding shares of stock thereunder, set forth in the petition, was devised by them solely, or chiefly, for the purpose of enabling themselves and their clients to hold and control property, otherwise within the jurisdiction of this Commonwealth and other states and countries, in such a form and manner that it should be, if possible, subject to the inheritance and succession taxes only of the state of Maine; that in furtherance of this purpose, and particularly to avoid, if possible, the payment of any legacy and succession tax to the Commonwealth upon the death of Lawrence Tucker, the said Robert H. Gardiner and Robert H. Gardiner, Jr., deposited the shares of stock described in the petition with the Gardiner Investment Company in the manner and form therein set forth; that this deposit was a mere matter of form; that, notwithstanding the same, these shares of stock were in substance and reality still held, owned and controlled by said trustees; and that said shares, or an interest therein, passed by the will of Lawrence Tucker to the persons described in the twelfth paragraph of the petition, within the meaning of the statutes of this Commonwealth. Wherefore the respondent says that said tax was legally assessed."

Lawrence Tucker died on May 16, 1912. St. 1912, c. 678, which does not include in the taxation of legacies and successions the personal property within this Commonwealth of nonresident decedents, was passed and took effect on May 29, 1912.

An agreed statement of facts was filed, which contained the following:

"3. The Gardiner Investment Company was a corporation formed under the laws of the State of Maine on March 7, 1910, by Robert H. Gardiner and Robert H. Gardiner, Jr., they and one Ralph A. Bartlett being the original incorporators. The authorized capital was one thousand dollars ($1000), of 100 shares of the par value of ten dollars ($10), it all being paid in. The corporation was dissolved in 1913. During the entire existence of the corporation 98 shares were held by Robert H. Gardiner, and one share

each by Robert H. Gardiner, Jr., and by Ralph A. Bartlett. Likewise during the entire existence of the corporation Robert H. Gardiner was president, Robert H. Gardiner, Jr., treasurer, and Ralph A. Bartlett, clerk, and these three constituted the board of directors. The purposes of the corporation, as stated in its charter, were as follows:

"'To buy, sell, own, hold, manage and deal in bonds, mortgages, debentures, notes, scrip, shares of stock or of beneficial interest in any public or private corporation or association, or other securities or evidences of indebtedness of any person, association, or corporation; and to do any and all things incidental, pertaining, necessary or proper to the conduct of said business; but this corporation shall not do any kind of a banking business or that of a corporation intended to derive profit from the loan or use of money.'

"This corporation did no business other than issuing contracts of the sort annexed to the petition. It issued these contracts only to clients of Robert H. Gardiner or of his son, Robert H. Gardiner, Jr., including trusts administered by them, and persons for whom they were agents. Such contracts were issued to trustees under wills proved in Maine, Massachusetts, Rhode Island and Connecticut, the trusts being for persons resident in those States and in a number of other States of the United States, and in France, England and some other countries. Contracts were also issued to individuals not trustees, resident in Maine, Massachusetts, New York, California, France and England, and to trustees under indentures of trust with persons resident in Maine, Massachusetts, Maryland and the District of Columbia. Contracts were issued referring to stocks of corporations or associations formed or owning property in one or more of most of the States of the United States and of several foreign countries. A small fee was paid to the Gardiner Investment Company at the time the various stocks were turned over to it and the contracts issued. At the times the various stocks were turned over to the Gardiner Investment Company and the contracts issued said company gave no consideration for such stocks except the agreements contained in said contracts. This corporation paid the expenses incidental to issuing these contracts and depositing stocks with the trust company. The stocks were in each instance transferred into the name of 'Gardiner In-

vestment Company,' and its president or treasurer voted the stock so transferred. The certificates deposited by the Gardiner Investment Company with the Maine Trust and Banking Company were not indorsed by said Gardiner Investment Company. There were advantages in the plan in that it resulted in simplification of bookkeeping and in greater ease of management of investments. It was the desire and purpose of Robert H. Gardiner and Robert H. Gardiner, Jr., in forming the Gardiner Investment Company, and in issuing contracts in its name in the manner and form set forth in the petition, to bring about the result that persons to whom contracts were issued should be subject to the inheritance taxes only of the jurisdiction of the domicil of the decedent, and not to those of the jurisdictions in which the corporations issuing shares of stock referred to in such contracts were respectively formed. . . .

"4. At the time of the death of Lawrence Tucker no demand had been made upon the Gardiner Investment Company by the promisees under the contracts referred to in the petition for any payments thereunder, nor had any default been made by said company under any of said contracts."

"6. The court may draw all reasonable and proper inferences of fact from the facts agreed."

In the Probate Court *Grant*, J., made an order dismissing the petition, and the petitioners appealed.

The appeal came on to be heard by *De Courcy*, J., who, at the request of the parties, reserved it, upon the pleadings, the agreed statement of facts, the decree of the Probate Court and the appeal therefrom and objections thereto, for determination by the full court.

*F. T. Field*, for the petitioners.

*W. H. Hitchcock*, Assistant Attorney General, for the respondent.

BRALEY, J.   By the respective wills of William W. Tucker and Susan E. Tucker, which were duly admitted to probate in this Commonwealth, the State of their domicil, a trust was created for the benefit of Lawrence Tucker their son, to whom the income was payable for life, and at his decease the trustees were to pay over the principal to whomsoever he should by his last will appoint. The son died on May 16, 1912, and having exercised the power of appointment by his will, which was allowed by the court of probate

for the county of Oxford in the State of Maine, the place of his residence, the trust terminated, and it became the duty of the trustees to transfer the principal to the petitioners who are the executors of the will of the donee, to be by them distributed in accordance with his testamentary directions. *Olney* v. *Balch,* 154 Mass. 318, 322. *Tudor* v. *Vail,* 195 Mass. 18.

By the St. of 1909, c. 527, § 8, "Whenever any person shall exercise a power of appointment derived from any disposition of property made prior to September first, nineteen hundred and seven, such appointment when made shall be deemed to be a disposition of property by the person exercising such power, taxable under the provisions of chapter five hundred and sixty-three of the acts of the year nineteen hundred and seven, and of all acts in amendment thereof and in addition thereto, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power, and had been bequeathed or devised by the donee by will. . . ." And by St. 1909, c. 490, Part IV, § 1, "All property within the jurisdiction of the Commonwealth, corporeal or incorporeal, and any interest therein, whether belonging to inhabitants of the Commonwealth or not, which shall pass by will, or by the laws regulating intestate succession, or by deed, grant, or gift . . . shall be subject to a tax. . . ."

It is settled by *Minot* v. *Winthrop,* 162 Mass. 113, *Minot* v. *Treasurer & Receiver General,* 207 Mass. 588, and *Clark* v. *Treasurer & Receiver General,* 218 Mass. 292, that under these statutes the question, whether the property disposed of under the power is subject to an inheritance tax, is to be determined by the test whether such tax could have been levied if the property devised or bequeathed had belonged to the donee. The title in the case at bar passed to the legatees by force of the wills of the donors of the power. *Raymond* v. *Commonwealth,* 192 Mass. 486. *Harmon* v. *Weston,* 215 Mass. 242, 249. And, if because of the exercise of the power the property could be applied in payment of the debts of the donee, yet through its exercise "a right of succession to property may come into existence afterwards which properly may be a subject for the imposition of a tax." *Minot* v. *Treasurer & Receiver General,* 207 Mass. 588, 591. It is true that the donee was a nonresident. But if the property consisted of shares of corporations or of voluntary associations domiciled, or of national banks situ-

ated, in this jurisdiction, the shareholders are the proprietors of the organizations, and as the necessary transfers by way of change of ownership and distribution could not be effectuated without the aid of our laws, a succession tax could be levied. *Minot* v. *Winthrop,* 162 Mass. 113. *Callahan* v. *Woodbridge,* 171 Mass. 595, 597. *Greves* v. *Shaw,* 173 Mass. 205, 208. *Moody* v. *Shaw,* 173 Mass. 375. *Bliss* v. *Bliss,* 221 Mass. 201, 207. *Walker* v. *Treasurer & Receiver General,* 221 Mass. 600. R. L. c. 109, §§ 32–39.

We thus come to the question whether the property consisting of personalty held in trust falls within this classification; or, in other words, what on the record is the property interest to be taxed. No description of the estate impressed with the trust by the testator and testatrix, or of the power, if any, of investment or reinvestment conferred upon the trustees, is to be found; nor do the terms of the will whereby the power has been exercised appear. It is, however, plain from the admitted recitals in the petition, that the trustees appointed originally, as well as the duly appointed and qualified trustees at the date of the death of the donee, held office under our laws applicable to the administration of trusts and the accountability of trustees for the proper management, investment and distribution of trust funds. Pub. Sts. c. 141. R. L. c. 147. The trusts were to be administered here, and even if the certificates of stock or shares of the nature previously described showing the extent of the property were in the possession of trustees domiciled in a sister State, this did not prevent the levying of a succession tax. *Greves* v. *Shaw,* 173 Mass. 205. *Brandeis* v. *Atkins,* 204 Mass. 471, 476. *Bliss* v. *Bliss,* 221 Mass. 201. St. 1910, c. 531. *Parkhurst* v. *Almy,* 222 Mass. 27. *Bellows Falls Power Co.* v. *Commonwealth,* 222 Mass. 51, 58, 59. R. L. c. 15, § 12.

The record does not show that title to the principal, in whatever form invested, has been transferred by the trustees to the executors. We assume however from the levying and payment of the tax, the abatement of which and its recovery back are sought, and from paragraph two of the petition stating, that in accordance with our statutes applicable to foreign wills ancillary letters have been issued to the petitioners as executors by the court of probate for the county of Suffolk, that transference and distribution has been effected. R. L. c. 15, § 51; c. 143.

It also is apparent, that at some period after the death of the

donors, but before the death of the donee, the trust funds in question comprised the shares of stock in different corporations and associations as described in paragraphs eight and nine of the petition and in the second paragraph of the agreed facts. If no changes of investment had been made the property would have been subject, under the exercise of the power of appointment, to an inheritance or succession tax. *Clark* v. *Treasurer & Receiver General*, 218 Mass. 292. *Walker* v. *Treasurer & Receiver General*, 221 Mass. 600, 602.

But the petitioners allege that at the time of the donee's death, the trustees, Robert H. Gardiner and Robert H. Gardiner, Jr., his son, had ceased to hold these shares and only held contracts of the Gardiner Investment Company, a corporation chartered by the laws of the State of Maine, by the terms of which the trustees purport to have sold the shares to the company. The company was incorporated with an authorized capital of $1,000, divided into one hundred shares of the par value of $10 each. Of the stock, which had been fully paid, Robert H. Gardiner, the president, held ninety-eight shares, and Robert H. Gardiner, Jr., the treasurer, and one Bartlett, the clerk, each held one of the two remaining shares; and these officers also constituted the board of directors, as well as the permanent stockholders. While the charter recites that the corporation is organized "To buy, sell, own, hold, manage and deal in bonds, mortgages, debentures, notes, scrip, shares of stock or of beneficial interest in any public or private corporation or association, or other securities or evidences of indebtedness of any person, association, or corporation; and to do any and all things incidental, pertaining, necessary or proper to the conduct of said business; but this corporation shall not do any kind of a banking business or that of a corporation intended to derive profit from the loan or use of money," the company, until dissolved in the year following the donee's decease, and after the enactment of our St. of 1912, c. 678, exempting from the inheritance tax personal property within the Commonwealth of non-resident decedents, transacted no business other than to issue "these contracts . . . to clients of Robert H. Gardiner, or of his son Robert H. Gardiner, Jr., including trusts administered by them, and persons for whom they were agents." And "contracts were issued referring to

stocks of corporations or associations formed or owning property in one or more of most of the States of the United States and of several foreign countries." A small fee was paid to the company when the various stocks were in some form turned over and the contracts were issued, but no consideration passed "except the agreements contained in said contracts." The expenses incidental to issuing the contracts and depositing the stocks with the Maine Trust and Banking Company, a corporation of Gardiner, Maine, were borne by the investment company.

If the terms of the contracts are now examined, we find that the Gardiners, describing themselves as trustees under the will of William W. Tucker and Susan E. Tucker, "for Lawrence Tucker, hereinafter called the promisee, have sold to the Gardiner Investment Company of Gardiner, Maine," a specified number of shares of the stocks held in trust. The context shows that the company in consideration of the "executed sale" agrees with the trustees either to return the identical shares or furnish "an equal number of similar shares" on demand, and until retransference to pay the trustees, who are referred to as the "promisee" on demand, and upon "surrender of this contract and attached certificate the fair market value at the time of such demand, less the usual expenses of sale, of an equal number of similar shares," such values to be fixed at the election of the company by a public or private sale by it, or by an appraisal of a disinterested person appointed by it and the promisee. The investment company further stipulates that until payment or retransference, it will pay to the promisee the equivalent of all dividends in money accrued and paid upon the stocks after the date of the contract, or upon an equal number of similar shares; and until full performance of these obligations, the investment company is to keep in the custody of the trust company certificates owned by the investment company for an equal number of similar shares; and the promisee agrees to protect the trust company "from all liability now or hereafter on account of its ownership of said shares." If the investment company makes default, then the trust company is irrevocably appointed "its true and lawful attorney with power of substitution, for it and in its name and behalf to sell, assign and transfer any such shares standing in its name, and pay the proceeds to

the promisee." The investment company, however, reserves the right at any time before default, and on reasonable notice, to pay "its obligations hereunder without demand of the promisee, and upon full performance shall be entitled to receive from the promisee a full discharge hereunder and a surrender of this contract and the attached certificate." The "attached certificate" of deposit issued by the trust company shows that the stock named in the contracts stood in the name of the Gardiner Investment Company and was deposited with the trust company on account of the contracts, "which certificates or others representing an equal number of similar shares are to be kept in the exclusive control of this company and redelivered to said Gardiner Investment Company only on the surrender of this certificate duly released by the promisee."

We do not find it requisite to a decision to determine whether the transaction set forth in this anomalous instrument is to be characterized as a sale or as a pledge, or whether, if turned over to the executors, they could have enforced them or required the legatees to accept one or more of the "contracts" in payment of the legacy.

The agreed facts contain the stipulation, that the court may draw all reasonable and proper inferences of fact from the facts agreed; and, independently of this stipulation, the court upon a case stated by agreement of the parties, "shall be at liberty to draw from the facts and documents stated in the case any inferences of fact that might have been drawn therefrom at a trial, unless the parties expressly agree that no inferences shall be drawn." St. 1913, c. 716, § 5.

It is obvious from its limited capital, the character of the business actually transacted, and its evanescent existence that neither the stock nor the contracts of the Gardiner Investment Company, which appear to have had no market or intrinsic value, fall within the class of securities ordinarily selected by trustees for the investment of trust funds, which in the case at bar appear to have been nearly sixty-fold more in value than the capital or tangible assets of the company which could be reached and applied in payment of its obligations.

The trustees, holding office, as we have said, under the decree of our courts, to which they are accountable, must be presumed

to have known the duty required of trustees in the preservation, management and disposition of trust funds. The rule obtaining in some jurisdictions does not permit outside investments by trustees unless permitted by the court, except in cases of necessity to preserve the fund. Perry on Trusts, (6th ed.) §§ 452, 454. The rule in this Commonwealth in making investments is different, and well settled. "They are bound to act in good faith and to exercise a sound discretion. . . . In many . . . cases investments in stock and bonds of great corporations organized and doing business in other States have been approved, where it appeared that the investment was made in good faith, and in the exercise of a sound discretion, according to the standard of other men of prudence, discretion and intelligence in the management of their own affairs in regard to the permanent disposition of their funds with a view to probable income as well as the probable safety of the capital to be invested." *Thayer* v. *Dewey*, 185 Mass. 68, 69, 70.

While in law a corporation is a person distinct from that of all the stockholders, and may deal with them and be dealt with by them as by other parties, nevertheless the owners of substantially the entire capital stock by the dominance conferred by such ownership can wield when acting in unison the chartered powers of the corporation in accordance with their will. *Old Colony Boot & Shoe Co.* v. *Parker-Sampson-Adams Co.* 183 Mass. 557, 567, 568. The instrumentality they use is the legal entity characterized as a corporation. And a court when necessary will "look beyond the corporate form to the purpose of it and to the officers who are identified with that purpose." *J. J. McCaskill Co.* v. *United States*, 216 U. S. 504, 515. It cannot be used successfully as a shield to conceal and pervert the truth. *Seymour* v. *Spring Forest Cemetery Association*, 144 N. Y. 333, 340. *Anthony* v. *American Glucose Co.* 146 N. Y. 407. Cook on Corporations, (7th ed.) §§ 663, 664. Machen on Corporations, §§ 1078, 1089. 7 R. C. L. Corporations, § 4. The application of this rule under well recognized modern methods of individuals carrying on business in corporate form depends on the varying circumstances of each case. *C. H. Batchelder & Co. Inc.* v. *Batchelder*, 220 Mass. 42, 44, 45.

It is manifest that whatever corporate action may have been

taken in making and issuing the contracts it amounted to nothing more than the formal expression of the will and purpose of the trustees, the corporators and stockholders. Their predominant object, although not specified in the charter, is stated in the agreed facts in these words: "It was the desire and purpose of Robert H. Gardiner and Robert H. Gardiner, Jr., in forming the Gardiner Investment Company, and in issuing contracts in its name in the manner and form set forth in the petition, to bring about the result that persons to whom contracts were issued should be subject to the inheritance taxes only of the jurisdiction of the domicil of the decedent, and not to those of the jurisdictions in which the corporations issuing shares of stock referred to in such contracts were respectively formed." The contracts in question, which contain no provisions for assignment or of transfer, were issued to themselves. The trustees reserve the full beneficial interest of dividends and rights to new stock if the capital of any of the corporations is increased, and can demand a return of the shares or the equivalent which is stated to be "the fair market value . . . of an equal number of similar shares," while they assume "all liability now or hereafter" on account of them. The identical shares are then deposited with the trust company, and, in so far as the record shows, without any indorsement by the investment company. And "at the time of the death of Lawrence Tucker no demand had been made upon the Gardiner Investment Company by the promisees under the contracts referred to in the petition for any payments thereunder, nor had any default been made by said company under any of said contracts."

The parties agreed that all material statutes and decisions of the courts of the State of Maine printed in the authorized publications of that State should be taken as proved and might be referred to by either of them as if set out at length in the agreed facts. But in the brief for the petitioners no reference is found to any statute of that State authorizing the levy of an inheritance tax upon these contracts or the shares of stock, or that in fact such tax has been levied.

The inference, that the trustees who organized and controlled the corporation organized and used it in the administration of estates of which they were trustees in furtherance of their own purposes as previously stated, is fully warranted. If the

contracts are viewed in the light of their inception and environment, the real purpose actuating the trustees in procuring the incorporation was not to avoid double taxation, but on the record to circumvent the laws of this jurisdiction and to forestall the possibility of a levy of the tax imposed by the tax commissioner. A man may change his domicil for the purpose of securing a lower rate of taxation. *Thayer v. Boston,* 124 Mass. 132, 148. But when he endeavors to escape all lawful taxation by the employment of devices similar to those discussed, his conduct will not receive the sanction of the courts. *Rubenstein v. Lottow,* 220 Mass. 156, 169. The identity of purpose and unity of interest whether the trustees are considered as administering the trust as individuals or as incorporated under the name of the Gardiner Investment Company, is complete. We are satisfied that in making these contracts they dealt with themselves and intended to retain and did retain full control of the legal title to the shares of stock which in reality comprised the trust property transferred to the petitioners as executors to be by them distributed to the legatees. *C. H. Batchelder & Co. Inc. v. Batchelder,* 220 Mass. 42, 44, 45, and cases cited. *First National Bank of Gadsden v. Winchester,* 119 Ala. 168. *Evarts v. Killingworth Manuf. Co.* 20 Conn. 447, 457. *Pott & Co. v. Schmucker,* 84 Md. 535. *People v. North River Sugar Refining Co.* 121 N. Y. 582, 621. *Seymour v. Spring Forest Cemetery Association,* 144 N. Y. 333, 340. *Anthony v. American Glucose Co.* 146 N. Y. 407. *Chicago Economic Fuel Gas Co. v. Myers,* 168 Ill. 139. *Donovan v. Purtell,* 216 Ill. 629, 639. *State v. Standard Oil Co.* 49 Ohio St. 137. *First National Bank of Chicago v. Trebein Co.* 59 Ohio St. 316. *J. McNeil & Brother Co. v. Crucible Steel Co.* 207 Penn. St. 493. *Milbrath v. State,* 138 Wis. 354. *United States v. Milwaukee Refrigerator Transit Co.* 142 Fed. Rep. 247, 255. *Holbrook, Cabot & Rolling Corp. v. Perkins,* 147 Fed. Rep. 166. *Simmons Creek Coal Co. v. Doran,* 142 U. S. 417. *J. J. McCaskill Co. v. United States,* 216 U. S. 504, 515.

A majority of the court are therefore of opinion that the contention of the petitioners, that as the shares of stock belonged to the Gardiner Investment Company and continued in its ownership, leaving only the contracts in the hands of the trustees as the property of the trust of which complete succession could be effected without the aid of our laws, cannot be sustained. The tax assessed

having lawfully been levied and collected, the decree of the court of probate dismissing the petition should be affirmed.

*Ordered accordingly.*

RUGG, C. J.  I cannot agree to the opinion in this case and feel constrained to express my dissent.  Lawrence Tucker was a resident of Maine and not of this Commonwealth.  This succession tax can be levied and collected only on the theory that the property disposed of by the will of Lawrence Tucker under the power of appointment was his property.  St. 1909, c. 527, § 8.  Such property is subject to a succession tax provided some necessary incident in the change of ownership wrought by his will depends upon the actual or moral support of the laws of this Commonwealth, and not otherwise.  *Walker* v. *Treasurer & Receiver General*, 221 Mass. 600.  The property which was the subject of disposition by the will of Lawrence Tucker in form consisted entirely of contracts of the Gardiner Investment Company, a Maine corporation.  It is only by declaring these contracts void and saying that the property disposed of by his will consisted of shares of stock in Massachusetts corporations that the property disposed of by his will can be said to have been subject to a succession tax in this Commonwealth.  These contracts were issued by a legally organized foreign corporation which has no place of business in this Commonwealth.  The Maine Banking and Trust Company, another foreign corporation with no place of business in this Commonwealth, was involved in the transaction by reason of receiving the stock in Massachusetts corporations to hold as collateral security for the contracts of the Gardiner Investment Company according to the terms of a receipt issued by it.  There were legitimate advantages in simplicity of bookkeeping and ease of investment, arising out of the organization of the Gardiner Investment Company.  The Gardiner Investment Company was a real corporation.  Its capital stock was paid in full.  A corporation is a single and separate legal being even though organized for the express purpose of taking over the business or conducting the business of one man.  *England* v. *Dearborn*, 141 Mass. 590. *Salomon* v. *Salomon & Co. Ltd.* [1897] A. C. 22.  As was said in *Peterson* v. *Chicago, Rock Island & Pacific Railway*, 205 U. S. 364, 392, the corporation "was a separate legal entity, and, what-

ever may have been the motives leading to its creation, it can only be regarded as such for the purpose of legal proceedings."

Whatever may be said as to the motives of the scheme here disclosed, that affords no basis for a legal tax upon property and persons not within the Commonwealth. One has the legal power to change his domicil. If there is any distinction in principle between changing it within the State for the purpose of securing a lower rate of taxation, which was held to be not unlawful in *Thayer* v. *Boston*, 124 Mass. 132, 148, and removing from the Commonwealth altogether for the purpose of avoiding a kind of tax imposed here which may not prevail in another jurisdiction, that distinction is wholly against the present tax. The power to levy a tax depends on jurisdiction and not on motives of persons who are non-residents. It may be that the investment by the trustees of the funds of an estate being administered in a Massachusetts court in contracts of the Gardiner Investment Company subjected them to personal liability in case of loss. But that is not basis for taxation when the investment is not within this jurisdiction. The legatees of Lawrence Tucker, in case he had made a specific legacy of the contracts of the Gardiner Investment Company, would have a right to demand from the trustees the contracts, and not cash or the shares of stock in the Massachusetts corporations which were deposited with the Maine Banking and Trust Company as collateral securities for the contracts. No incident of the transfer of such title would depend in any degree for its validity upon the support of Massachusetts law. The testator was a non-resident and the thing willed would be a security of a foreign corporation actually in the physical possession of persons outside of the Commonwealth.

Confessedly the tax can be collected only upon the transfer of shares of stock in Massachusetts corporations which have been disposed of by the will of Lawrence Tucker and whose transfer, therefore, is dependent upon Massachusetts laws. *Greves* v. *Shaw*, 173 Mass. 205. But all these certificates of shares of stock in Massachusetts corporations are in the name of the Gardiner Investment Company and not in the names of the trustees. The custody of all this stock is in the Maine Banking and Trust Company within the State of Maine by virtue of a valid agreement between it and the Gardiner Investment Company. It does not

appear that any transfer of the shares of stock in Massachusetts corporations has been made or is necessary in order fully to execute the will of Lawrence Tucker, or that such transfer is likely to be made within any reasonable time as a consequence of the full execution of that will. The circumstance that the wills under which the power of appointment was exercised were Massachusetts wills is now of no significance. That circumstance would have subjected the property to a succession tax as the law at first was enacted. *Emmons* v. *Shaw,* 171 Mass. 410. But that has been changed by St. 1909, c. 527, § 8. The trustees under the Massachusetts wills are non-residents and hence no tax can be founded on their domicil, as in *Welch* v. *Boston,* 221 Mass. 155. The fact that the trust estate, as to which Lawrence Tucker exercised the power of appointment, was being administered by our probate courts affords no foundation for the tax under the succession tax law as it now exists. *Clark* v. *Treasurer & Receiver General,* 218 Mass. 292. *Minot* v. *Treasurer & Receiver General,* 207 Mass. 588. Doubless it would be possible for the Legislature to establish a *situs* for taxation purposes within this Commonwealth of all intangible personal property held by trustees under Massachusetts wills, appointed by Massachusetts courts. *Newcomb* v. *Paige,* 224 Mass. 516. But the Clark case and the decisions on which it is founded show that that has not been done. It seems to me that the petition ought to be granted.