Harry W. Ross and Another, Respondents, *v.* Marcus M. Jacobowitz, Appellant.

Fourth Department, March 10, 1926.

Landlord and tenant — action of ejectment under Real Property Law, § 231, subd. 1, on ground that defendant as lessee had used part of premises for gambling — lease was made in September, 1918, and term commenced in May, 1922 — in 1920 defendant's business which was carried on at another place was incorporated and lease was transferred to corporation — sublease was made by corporation to third person whose lessee conducted gambling place — no evidence that officers of corporation knew before or after sublease that sublessee was to conduct or was conducting gambling place — corporation and defendant not identical.

The lessor of real property cannot successfully maintain an action of ejectment under subdivision 1 of section 231 of the Real Property Law against the lessee, upon the ground that the lessee had used or occupied a part of the premises for gambling, where it appears that the lease was made by the defendant in September, 1918, but the term was not to commence until May, 1922; that thereafter and in March, 1920, the defendant, who was conducting a glove factory in partnership with his son, incorporated the business and transferred the lease in question to the corporation; that the defendant's glove business was conducted in another building; that in May, 1924, the corporation acting

through one of its officers sublet a part of the premises to a third person who, in turn, sublet to another who was arrested and convicted of violating a city ordinance relating to gambling; and that the officer of the corporation executing the lease did not know at the time the lease was executed that it was the intention of the sublessee to conduct a gambling place and did not know after the lease was executed that a gambling place was being conducted on the premises.

There is no evidence to support the finding that said officer of the corporation had any knowledge of any intention on the part of the sublessee to conduct a gambling place or that he had any knowledge that a gambling place was being conducted prior to the arrest of the sublessee.

Furthermore, even though the findings were supported by evidence, the judgment against the original lessee must be reversed, since it was error for the court to hold that the original lessee and the corporation were identical, for it appears that the corporation, which is engaged in the manufacture of gloves, was carried on in a regular and legal manner for that purpose, and was not a cover for any illegal acts of the defendant.

APPEAL by the defendant, Marcus M. Jacobowitz, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Onondaga on the 24th day of April, 1925, upon the verdict of a jury rendered by direction of the court after the jury had answered two submitted questions in the affirmative, and also from an order entered in said clerk's office denying defendant's motion for a new trial made upon the minutes.

*Levy & Shulman* [*Ralph Shulman* of counsel], for the appellant.

*Nash, Britcher & Eckle* [*John F. Nash* of counsel], for the respondents.

CROUCH, J. The action is brought in ejectment under subdivision 1 of section 231 of the Real Property Law, upon the ground that the defendant as lessee had used or occupied a part of the demised premises for an illegal business, to wit, bookmaking or gambling.

Under date of September 27, 1918, plaintiffs leased to defendant a three-story building in Syracuse, N. Y., consisting of two stores on the ground floor with lofts above. The term was for ten years, to commence May 1, 1922. There was no provision against assignment.

For some time prior to March, 1920, defendant and his son Felix were engaged in the glove business under the assumed name of " Syracuse Glove Factory." In March, 1920, the business was incorporated under the name of " Syracuse Glove Factory, Inc." One-third of the stock was owned by defendant, one-third by Felix and one-third by others of the family. Shortly after the incorporation defendant and Felix by written assignment transferred to the corporation all the stock, fixtures, leases and good will of the business, including the lease of the premises in question. The two stores were rented to tenants. The glove business of the

corporation was carried on in another building on the same street 200 feet to the east.

On May 8, 1924, the corporation, acting by Felix, its secretary and treasurer, sublet to one Schnadmill a part of the second floor of the demised premises for three months, with a privilege of renewal for an additional term. Schnadmill claims to have sublet in turn to one Silliman, who occupied the rooms on or about May fifteenth. On May nineteenth Silliman was arrested and convicted upon a plea of guilty for violation of a city ordinance relating to gambling.

At the close of the trial herein, defendant moved for a nonsuit and plaintiffs for the direction of a verdict. The trial judge held that the corporation was a mere cover for defendant, that Felix was his agent and that defendant was chargeable with any knowledge which Felix had or should have had. He also held that the premises had been " used " for an illegal business. He submitted two questions to the jury: *First,* did the son (Felix) when he made the lease to Schnadmill know, or should he have known, that the premises were likely to be used for immoral purposes? *Second,* after the lease was made and before the raid by the police, did the son know, or in the exercise of ordinary care should he have known, that the premises were being used for immoral purposes? The jury answered both questions in the affirmative. Thereupon a verdict was directed for plaintiffs.

There is no evidence to support the first finding of the jury. As to the second, there is no evidence of actual knowledge and little, if any, evidence from which to draw an inference constructively. Schnadmill appeared first in answer to an advertisement. Felix had never met him before. The sublease was in writing and was made expressly for business purposes only. The rooms rented were occupied only four or five days before the arrest. Felix was engaged in managing the business of the glove corporation, not on the premises in question, but in another building some distance away. He had no occasion to go on the premises. There is no evidence that he did. There is nothing to show anything out of the common which should or might have attracted his attention. One of the plaintiffs testifies to having known what was going on three days before the arrest, but does not tell what he knew or how he learned it. If his information came from others, they were not called as witnesses. It appears that Schnadmill kept a pool and billiard room and that Felix, after the arrest, knew where to find him. All these circumstances afford slight foundation for the inference drawn.

But even though we were to accept the findings of the jury,

we are of the opinion that the judgment must be reversed for error in holding that the defendant and the corporation were identical and that the latter was simply a shadow which could be disregarded. It is true that where the corporation is a mere cover for fraud or for illegal acts, the courts will brush it aside. " We have of late refused to be always and utterly trammelled by the logic derived from corporate existence where it only serves to distort or hide the truth." (*Anthony* v. *American Glucose Co.*, 146 N. Y. 407, 413.) But there is nothing of that sort shown here. A family business, long existing, was incorporated toward the close of defendant's active business career. That occurred two years before the term of the lease in question commenced. Thereafter the business was apparently conducted openly and regularly under the corporate form. The monthly rent checks from the beginning were corporate checks, and, with the accompanying letters, gave clear notice to plaintiffs of the ownership of the lease. There is no suggestion in the evidence of fraud or illegality. There are present none of the elements which permit a disregard of " the logic derived from corporate existence." (See Cook Corp. [8th ed.] §§ 6, 663, 664; " Piercing the Veil of Corporate Entity," by I. Maurice Wormser, 12 Col. Law Rev. 496; *Gordon* v. *Ashley*, 77 App. Div. 525; *McIlrath* v. *Waterbury & Sons Co.*, 193 id. 491.)

The judgment and order should be reversed, with costs, and the complaint dismissed.

HUBBS, P. J., CLARK, SEARS and TAYLOR, JJ., concur.

Judgment and order reversed on the law and facts, with costs, and complaint dismissed, with costs.